# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

IN RE:

David Burns Goldston, III,

Debtor(s).

C/A No. 09-06305-JW

Chapter 13

**ORDER REGARDING MOTION FOR HARDSHIP DISCHARGE AND DISMISSAL OF CASE**

This matter comes before the Court on the Motion for Hardship Discharge ("Motion") filed by David Burns Goldston, III ("Debtor") on March 5, 2021.  The Chapter 13 Trustee and two of Debtor's creditors, Dana Rabon Goldston and Dale P. Johnson, filed objections to the Motion.  The Motion was set for a hearing but will be rescheduled.[1]  On that same date, with notice to the parties in interest, the Court will also consider whether dismissal of the case is appropriate.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), and (O).  Based upon the present record of this case and the applicable law, the Court makes the following findings of fact and conclusions of law:[2]

## <u>FINDINGS OF FACT</u>

1.    On August 26, 2009, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.

2.    On September 10, 2009, Debtor filed a chapter 13 plan, which was subsequently amended on January 11, 2010, February 23, 2010, March 2, 2010, and March 8, 2010. The chapter 13 plan filed on March 8, 2010 was confirmed on March 10, 2010 ("Original Confirmed Plan").  The Original Confirmed Plan provided for Debtor's monthly payment to the Trustee of $1,650 for

---

[1]    On the day before the hearing, the parties presented a settlement order, which may require notice.

[2]    To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

6 months, followed by $2,125 for 51 months, for a total period of 57 months. The Original Confirmed Plan did not propose to pay 100% of general unsecured claims.  The first payment under the Original Confirmed Plan was due April 2010.

3.    On January 12, 2011, Debtor filed a motion for moratorium, requesting a three-month moratorium on his Trustee payments, with payments to recommence in March 2011.  An Order Granting the Motion for Moratorium was entered on February 9, 2011. As a result of the three-month moratorium, the plan period was extended to 60 months.

4.    On April 19, 2012, Debtor filed an amended chapter 13 plan, which reduced payments by providing for payments to the Trustee of $1,650 for 6 months, followed by $2,125 for 25 months, followed by $1,400 for 26 months for a total period of 57 months (60 months with the three-month moratorium).   The amended plan did not propose to pay 100% of general unsecured claims.

5.    The amended plan was confirmed on June 25, 2012.

6.    Debtor's father, David B. Goldston, Jr., died in August of 2012, leaving an inheritance to Debtor. A probate estate was opened in the General Court of Justice, Superior Court Division, Columbus County, NC, Case No. 2013-7-999.  Debtor is one of two beneficiaries of the probate estate and served as executor of the estate.  According to Debtor's counsel, she advised the Trustee on September 12, 2012 that Debtor was an heir of his father's estate and that assets would be available for distribution at some point in the future.

7.    On March 3, 2014, the Trustee moved to modify the confirmed plan to provide for payment in full to general unsecured creditors on account of Debtor's anticipated inheritance from his father's estate.  In her Motion, the Trustee indicated that she learned that Debtor was a beneficiary of his father's estate "in the fall of 2013."  In the motion to modify, she requested that

the modified plan allow Debtor to continue to make his scheduled monthly payments but with a final lump sum payment of $182,125 to pay the unsecured creditors in full. Debtor timely objected to the motion and argued that payments under a chapter 13 plan could not be extended beyond 60 months.

8.    While no completed form plan was filed or circulated to creditors, nor any confirmation hearing held, on April 21, 2014, the Court entered a Consent Order Modifying Previously Confirmed Plan ("2014 Modification Order"), presented by and consented to by Debtor's counsel and the Trustee, which only modified the April 12, 2012 plan as follows:

> **Paragraph IIIA**. *In addition to the payments specified in the previously confirmed plan, the Debtor shall make a payment to the Trustee from distributions available from the Estate of David B. Goldston, Jr., Case No. 2013-7-999, in an amount sufficient to satisfy all allowed claims.*

> **Paragraph IIIE**. *General unsecured creditors shall be paid allowed claims on a pro rata basis by the Trustee to the extent that funds are available after payment of all other allowed claims. Debtor proposes to pay 100% of general unsecured claims.*

The 2014 Modification Order provided that the Trustee and Debtor anticipated a distribution from the probate estate within the next 90 days, and therefore the Trustee and Debtor expressly agreed that the issue of whether the term of the plan payments could be extended beyond five years did not need to be addressed at that time. The 2014 Modification Order did not establish the amount or timing of any payments to the Trustee and did not consider feasibility or the actual expenses of Debtor at that time. Among other provisions, the modified plan (hereinafter, the "Plan") retained the provisions of the April 12, 2012 plan requiring Debtor to submit his future earnings and other future income through monthly payments to the Trustee for 60 months as well as the vesting

provision of the April 12, 2012 plan, which provided that property of the estate will remain property of the estate, but possession of property of the estate shall remain with Debtor.  The 2014 Modification Order did not extend the term or applicable commitment period of the Plan.  It provided that the parties agreed "that the Trustee shall not be prejudiced in raising issues pursuant to 11 U.S.C. § 1329(a)(2) [(regarding the extension or reduction in the term of the plan)] in a subsequent pleading."

9.    On January 7, 2015, the Trustee filed a Motion to Modify the Plan After Confirmation to Keep Bankruptcy Open Until Finalization of Inheritance and Payment of Proceeds to the Bankruptcy Estate. In the motion, the Trustee noted that no distribution from the father's estate had been made yet and requested to extend the time for the closing of the bankruptcy case to an indefinite date in the future to allow for an inheritance distribution to Debtor to be finalized. In that motion, the Trustee did not allege any misconduct or unreasonable delay by Debtor but merely that the law allowed the case to remain open for receipt of future payments.  Debtor objected to the Motion, again arguing that an extension for plan payments could not extend beyond the 60 months (5 years) specified in 11 U.S.C. § 1329(c).[3] A hearing was held on February 19, 2015. At the hearing, the Court relied upon the Trustee's citation of Fourth Circuit authority that the estate may remain open beyond the commitment period for the purpose of the Trustee receiving additional payments. However, while expressing concern regarding setting any precedent that would require a debtor to make payments under a plan longer than permitted by the Bankruptcy Code, the Court recognized some short agreed upon period may be considered.  The matter was taken under advisement with the Trustee to submit a proposed order.

---

[3]    Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) shall be by section number only.

10.    On March 13, 2015, the Trustee and Debtor presented and the Court entered a Consent Order to Hold Bankruptcy Case Open Pending Receipt of Funds from Debtor's Inheritance ("2015 Consent Order"), which findings included that "the bankruptcy case should remain open until the Trustee receives sufficient funds from Debtor's entitlement under the probate estate to pay all unsecured creditors in full.  In the event that the Debtor's entitlement under the probate estate is insufficient to pay the unsecured creditors in full, the case shall remain open until the Trustee receives the Debtor's entitlement under the probate estate subject to any exemptions to which Debtor may be entitled." The 2015 Consent Order did not extend the applicable commitment period or the term of the Plan but allowed the case to remain open.

11.    In April of 2015, 60 months had elapsed since the first payment was due under the Original Confirmed Plan, therefore marking the end of the applicable commitment period.

12.    Between March of 2015 and October of 2019, no motion regarding the modified Plan, case duration, Debtor's actions or inactions, or any other issue related to case administration was raised to the Bankruptcy Court by the Trustee, Debtor, or any creditor.  The Court did not otherwise monitor the progress of the case.  The bankruptcy case has remained pending for more than six years after the entry of the 2015 Consent Order without distribution of funds from the father's probate estate or payments therefrom to the Trustee.

13.    According to probate documents presented by the Trustee, on August 4, 2017, Debtor was removed as executor of his father's probate estate by an order of the probate court. The probate court's order found that Debtor's removal was appropriate "based upon [Debtor's] bankruptcy proceedings and the failure of [Debtor] in effectively and efficiently administering and closing the probate estate [and that Debtor] has a private interest, which tends to hinder and be adverse to a fair and proper administration of the estate of [Debtor's father]." Noting the effect of

his pending bankruptcy proceeding, the probate court in fact found that "[Debtor's] interests have been adverse to a fair and proper administration of the [probate] estate." In addition, the probate court noted that "no valid justification has been provided for the [probate] estate [of Debtor's father] remaining open for such a protracted time" and found "that no such justification exists" in considering Debtor's removal as Debtor's father had been deceased for five years and the probate proceedings had been pending for approximately four years at the time of his removal. The probate court ultimately found sufficient grounds existed for revocation of Debtor's letters of administration pursuant to N.C.G.S. § 28A-9-1(a)(4), which allows the Clerk of the probate court to revoke of letters of administration for a probate estate where "[t]he person to whom they were issued has a private interest, whether direct or indirect, that might tend to hinder or be adverse to a fair and proper administration." Thereafter, Donald W. Viets, Jr., a former attorney, was appointed as executor to administer the probate estate.  Sometime in 2018, after one year of service, Mr. Viets was removed as executor due to his diagnosis with dementia.  Thereafter, Michael Scott was appointed as executor.

14.    The Chapter 13 Trustee alleges further that while Debtor was the executor of his father's probate estate, "probate assets went missing . . . and were improperly distributed to him," noting that "the forensic accounting in the [father's] probate estate, completed only recently, found that approximately $65,000 of probate assets were improperly distributed to the Debtor, and therefore this amount will be taken from Debtor's share of the inheritance and paid to the other heir, Caroline Goldston."

15.    In response to the Trustee's assertions regarding Debtor's misconduct, Debtor argues that his removal as executor was due to the difficult personal relationships existing between himself and co-beneficiaries and parties contesting the Will and not any misconduct.  Additionally,

any amounts paid to him were court approved commissions or repayment of the advance of expenses beneficial to the property of the probate estate.

16.     Over two years later, on October 16, 2019, the new Chapter 13 Trustee[4] filed a motion to dismiss the case under 11 U.S.C. § 1307(c) to allow creditors to pursue their state court rights of collection since the case had been open for ten years and for four years since the entry of the 2015 Consent Order and the end of the applicable commitment period under the Bankruptcy Code.  The Trustee's motion indicated that after inquiries made to the executor, distribution from the probate estate was expected to be further delayed and therefore, the case should be dismissed to allow creditors to pursue their state court remedies.  Upon objection by two of Debtor's creditors, the Trustee withdrew the motion prior to any hearing or consideration by the Court for the stated purpose of "allowing more time for probate to proceed."

17.     Despite administration of the probate estate by the new executors, Mr. Viets and later Mr. Scott, no distribution was made to Debtor from the probate estate, and therefore no further payment was made to the Trustee prior to Debtor's death on December 25, 2020.  According to the parties' recent pleadings, Debtor is survived by his wife, Ashley Pate Goldston, who is designated as the executrix of his estate under his will and is his sole heir.  By the time of his death, Debtor had made more than the 60 payments required by the Plan to the Trustee totaling $103,631.07.  The Plan provided for 57 payments ($1,650 for 6 months, followed by $2,125 for 25 months, followed by $1,400 for 26 months) totaling $99,425.00.[5]  In total, Debtor made 63 payments over the course of 70 months.  The total of all payments received by the Trustee from

---

[4]     Joy S. Goodwin was the initial chapter 13 trustee appointed for this case.  Pamela Simmons-Beasley was appointed as Trustee on January 1, 2016, following the retirement of Trustee Goodwin.

[5]     The Plan included the earlier 3-month moratorium that was granted by the Court; therefore, the Plan's term was actually 60 months.

Debtor under the confirmed Plan, as modified, exceeded by number and amount the requirements of the modified Plan.

18.     On February 3, 2021, Debtor filed a Motion to Continue Administration for the purpose of distributing funds currently on hand in the estate of David B. Goldston, Jr. and to pursue a hardship discharge to complete the chapter 13 case.

19.     On February 10, 2021, the Trustee filed a Response to Motion to Continue Administration, requesting an explanation as to why continued administration should be limited to distributing only those funds currently on hand from Debtor's father's probate case, rather than letting the probate case continue for the bankruptcy case to receive any future funds.

20.     On March 5, 2021, Debtor filed the Motion for Hardship Discharge.

21.     On March 11, 2021, the Court granted the Motion to Continue Administration "to the extent it seeks to allow a representative of the deceased Debtor's estate to continue administration of the chapter 13 case to request a discharge under § 1328(a) for the deceased Debtor and other incidental acts consistent with the confirmed plan, or in the alternative, request a hardship discharge under § 1328(b) for the limited purpose of concluding and closing the case."

22.     On March 19, 2021, objections to the Motion for Hardship Discharge were filed by the Trustee as well as two of Debtor's unsecured creditors: Dana Rabon Goldston, his ex-wife, and Dale P. Johnson.

23.     On March 22, 2021, the Court entered an Order Setting Hearing for Consideration of Dismissal of Chapter 13 Case, wherein all parties in interest in Debtor's bankruptcy case were provided with notice that if Debtor's Motion for a Hardship Discharge was denied, the Court would conduct a hearing on the same date as the hearing on the Motion for Hardship Discharge to determine whether the case should be dismissed: (1) due to the death of Debtor pursuant to Fed.

R. Bankr. P. 1016; (2) for cause under 11 U.S.C. § 1307(c), including but not limited to the enumerated subsections (1)-(11); (3) pursuant to 11 U.S.C. § 105(a); and (4) by abstention under 11 U.S.C. § 305(a).  All creditors and parties in interest were provided an opportunity to object on or before April 5, 2021.

24.    On April 5, 2021, Debtor filed an objection to dismissal, asserting that none of the grounds for dismissal under § 1307 are present, that Debtor paid all of the monies required by his base Plan plus some additional monies, and that the delay in the distribution of probate estate assets from his father's estate was due to many circumstances that were beyond Debtor's control, including disputes between the heirs and his father's third wife who was not named in the father's will and was in possession of estate assets.[6]

## CONCLUSIONS OF LAW

### I.    *Modification of the Plan and Consent Orders Relating to Inheritance*

The issues before the Court directly relate to Debtor's performance under the modified Plan[7] effective by the 2014 Modification Order. At that time, the Trustee and Debtor agreed that Debtor's anticipated share of the inheritance from his father's estate was property of the estate pursuant to 11 U.S.C. §§ 1306(a), likely to be available within the five-year period after the first payment under the Original Confirmed Plan was due.  *See Carroll v. Logan,* 735 F.3d 147, 150 (4th Cir. 2012).  The Trustee and Debtor agreed that the entitlement to the inheritance was a

---

[6]    On the eve of the hearing on the Motion for Hardship Discharge or Dismissal, Debtor, the Trustee and the two objecting creditors, presented a settlement order to the Court.  The proposed settlement order primarily provided that a distribution from the inheritance in an estimated amount of $75,000 would be made by the executor of the father's estate to the Trustee on or before June 30, 2021 for payment to creditors.  Upon distribution or upon the inability to distribute, the parties agreed for Debtor to receive a hardship discharge.  The Court's consideration of the settlement will be addressed by separate order.

[7]    The modified Plan was the plan filed on April 19, 2012.

substantial and unanticipated change in circumstances for Debtor occurring post-confirmation, and therefore it was cause for modification of Debtor's April 19, 2012 plan to increase plan payments.

The 2014 Modification Order incorporated the terms of the April 19, 2012 plan but included two additional provisions. The first provided that "***Debtor shall make a payment*** to the Trustee ***from distributions available from the estate of David B. Goldston, Jr.,*** Case No. 2013-7-999, in an amount sufficient to satisfy all allowed claims." The Plan, as modified by that Order, anticipated that ***the payment would be made by Debtor to the Trustee from funds received by Debtor***. It did not provide for payment to be made directly to the Trustee from the estate of David B. Goldston, Jr. The second provision provided that general unsecured creditors would be paid "***to the extent that funds are available***."

According to 11 U.S.C. § 1329(b)(1), a post-confirmation modified plan must comply with §§ 1322(a), 1322(b), 1323(c) and the requirements of § 1325(a). However, in this instance a newly completed form plan was not submitted, no confirmation hearing was held, and there is nothing in the record to indicate that an analysis of those confirmation requirements was undertaken, including an examination of feasibility of the payments based upon amended schedules I and J. This failure was likely because the modification was intended to capture in a lump sum any distributions of the inheritance anticipated to occur within ninety days after the modification.

Pursuant to 11 U.S.C. § 1329(c), a post-confirmation modified plan is subject to a limit in its duration, with the maximum length being five years after the time that the first payment under the original confirmed plan was due. According to its terms, the 2014 Modification Order did not extend the term of the Plan beyond 60 months. In fact, it expressly states that issues raised by the Trustee pursuant to 11 U.S.C. § 1329(a)(2), which allows a modification of a plan to extend or reduce the time for plan payments, would not be addressed at that time.

The record reflects no significant case activity from April 21, 2014 to January 7, 2015. During this period, Debtor continued to pay the monthly payments required by the Plan but did not report receipt of any distributions from the inheritance. As the end of the applicable commitment period drew near, the Trustee filed another motion to modify the Plan seeking to keep the case open for the purpose of receiving future payments from Debtor's entitlement under the probate estate. Debtor objected to the motion on January 20, 2015, and a hearing was held on February 19, 2015. At the hearing, Debtor argued that the commitment period was limited to five years and the Trustee argued that the Fourth Circuit case of *West v. Costen*, 826 F.2d 1376 (4th Cir. 1987) recognized that a chapter 13 case could stay open for some reasonable time beyond five years to complete case administration.[8] While Debtor objected based on the limited plan duration

---

[8]       The Court finds the Trustee's argument and reliance on *West v. Costen* and other authority in the 2015 Consent Order and the Chapter 13 Trustee's 2015 Motion to Modify the Plan appears to be misplaced under the circumstances presented in this matter. Specifically, both the 2015 Consent Order and the Trustee's 2015 motion to modify plan cite two cases in support for holding a case open beyond the 60-month plan period: an unreported case from the bankruptcy court for the Northern District of Alabama, *In re Tinney*, No. 07-42020, 2012 WL 2742457 (Bankr. N.D.Ala. Jul. 9, 2012) and *West v. Costen*, 826 F.2d 1376 (4th Cir. 1987). In *Tinney*, the bankruptcy court, in a footnote, rejected the debtor's argument that an inheritance that was unliquidated due to pending unresolved probate claims should not be included as property of his bankruptcy estate and stated that "[t]he Court assumes the Trustee will intervene in the probate court proceeding and assure the bankruptcy estate is protected, and the Debtor's inheritance will ultimately be distributed to the Trustee up to an amount that will pay unsecured creditors in full." *Tinney*, 2012 WL 2742457, at *3 n.4.

        While the Court agrees with *Tinney* that an inheritance received postpetition is property of the estate, as was later confirmed by the Fourth Circuit in *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013), and that a chapter 13 debtor's commitment in a bankruptcy case is subject to modification when circumstances increase the debtor's ability to pay during the life of the case, such as debtor's receipt of increased earnings or receipt of a lump sum payment from insurance proceeds or law suit settlement, the Court disagrees that it can hold a case open and effectively extend the applicable commitment period of a plan to await a future distribution from an inheritance occurring after the applicable commitment period has expired. The Court also disagrees with the *Tinney* court's assumption that a chapter 13 trustee possesses an ability to intervene in a probate court proceeding to assure that a distribution is made to the trustee. A chapter 13 trustee does not have the power to intervene in a probate court proceeding to collect and reduce to money a debtor's inheritance that is property of the estate, as that power was not given to chapter 13 trustees in § 1302.

        In *West v. Costen*, a creditor appealed the district court's order affirming the bankruptcy court's approval of a § 1328(a) discharge for the debtor, arguing that the debtor's final payment extended beyond the five-year statutory time limit under § 1329(c) and the final payment was submitted after the deadline for the final payment in the plan. The Fourth Circuit first concluded that the five-year deadline set forth in § 1329(c) commenced on the date the first payment under the confirmed plan was made, which was the first payment due after confirmation, and therefore debtor's final payment was made within the five-year statutory time limit. The Circuit Court further found that the debtor's delay in submitting his final payment a few months beyond the plan deadline was caused by procedural delays not attributable to the debtor and therefore the bankruptcy court's granting of a discharge to the debtor was not

expressed under § 1329(c), she did not oppose a reasonable extension for case closing.  There was nothing in the record of this Court at this point or before where the Trustee expressed that Debtor was acting improperly to delay distribution of his inheritance from his father's estate. The Court took the matter under advisement to consider applicable case authority.

On March 13, 2015, approximately one month before the end of the 60-month applicable commitment period under the Plan, the Trustee and Debtor's counsel presented the 2015 Consent Order. The Court considered the 2015 Consent Order as a settlement of arguments before the Court. The 2015 Consent Order provided that the bankruptcy case would be held open "until the Trustee receives sufficient funds from Debtor's entitlement under the probate estate to pay all unsecured creditors in full."[9] The 2015 Consent Order neither modified the Plan to extend the time for payments beyond 60 months nor addressed arguments relating to modification under § 1329(a)(2) or (c).

Between the entry of the 2015 Consent Order and the filing of the Motion for Continued Administration and Motion for Hardship Discharge filed by Debtor in March of 2021, this case did not come back for consideration before the Court.  On October 16, 2019, the present Trustee

---

improper. *West*, 826 F.2d at 1329. The Court finds that its earlier reliance on the Trustee's argument that provided authority to hold the case open indefinitely until the debtor received a distribution from the probate estate was incorrect. The holding in *West v. Costen* should not be so broadly interpreted.  The final payment in *West* was not made beyond the five-year deadline set forth in § 1329(c). This Court was unable to find any authority allowing a case to remain open for an indefinite period as the debtor waited for a distribution. Therefore, upon further review, the Court finds the authority relied upon by Trustee to support the 2015 Consent Order to be unfounded and erroneously asserted.

[9]        To the extent it is necessary, the Court would consider vacating the 2015 Consent Order and its provisions to keep the case open pending receipt of the inheritance funds. To the degree that the 2015 Consent Order conflicts with the express provisions of the Bankruptcy Code, that provides a sufficient basis for such a reconsideration and correction as in the interest of justice.  Fed. R. Civ. P. 60(b)(4) & (6) (2021) (providing for an order to be vacated if the judgment is void or for any other reason that justifies relief); *In re Cumbee*, C/A No. 13-07634-JW, slip op. (Bankr. D.S.C. Jul. 14, 2014) (requiring the debtor to amend the plan after the Court entered an order confirming the debtor's plan that incorrectly claimed that a creditor's interest was judicial lien and sought to avoid that lien, when in fact the creditor's interest was actually an executory contract); *In re Beatty*, C/A No. 11-51384, 2012 WL 3835855, at *1-2 (Bankr. W.D.N.C. Aug. 29, 2012) (reconsidering a confirmation order due to a provision in direct contradiction to the Bankruptcy Code as *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) noted that bankruptcy courts are required to address and correct defects in a debtor's chapter 13 plan).

requested dismissal of the case due to the lack of progress in the administration of the father's estate but the motion was withdrawn before a hearing due to creditor objections.

Debtor's counsel now seeks to conclude the case by the granting of a hardship discharge under § 1328(b) due to Debtor's death to which the Trustee and creditors have objected. While the Trustee stated at the initial hearing on continued administration that she was not seeking the dismissal of the case, the Court *sua sponte* noticed a hearing and an opportunity to object to its consideration of dismissal.

The Court concludes after consideration of record of this case that the case should be concluded either by discharge or dismissal for the following reasons: the maximum applicable commitment period to require Debtor's payments has expired with it appearing that Debtor made all required payments; to be subject to payment to the Trustee, property of the estate must be received by Debtor and available for payment during the applicable commitment period provided by a confirmed plan; and the Trustee has no authority or standing to collect and reduce to money property of the estate other than from payments by Debtor.

### a.  Duration of Modified Plan

In a chapter 13 case, the debtor commits to repay his creditors with future income pursuant to a court-approved plan. *Pliler v. Stearns,* 747 F.3d. 260, 263 (4th Cir 2014). Section 1322 of the Bankruptcy Code governs the contents of such plan. Section 1322(a)(1) provides that the plan "shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan."[10]

---

[10]     While § 1322(b)(8) indicates that the plan *may* provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor, the section is intended to allow a debtor to voluntarily propose to convey or liquidate property of the estate or property of the debtor and transfer the proceeds from the sale of such property to a claimholder in full or partial satisfaction of the claim.  8 Collier on Bankruptcy ¶ 1322.12 (16th

In this case, since Debtor has above median income, the maximum duration of payments under a post-confirmation modified plan is five years (60 months) pursuant to § 1325(b)(1)(B). Section 1329(c) provides:

> A plan modified under this section *may not provide* for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, ***but the court may not approve a period that expires after five years after such time.***

"Congress provided that Chapter 13 bankruptcy payment plans could last no longer than five years…. The debtor knows that after five years he is "in the clear" and has a chance for a "fresh start" in his financial life." *In re Arnold,* 869 F.2d 240, 242 (4th Cir. 1989). "Congress also intended, however, that the debtor repay his creditors to the extent of his capability ***during the Chapter 13 period***." *Id.* (emphasis added); *see also In re Black,* 292 B.R. 693, 700 (B.A.P. 10th Cir. 2003) ("The legislative history of the Bankruptcy Code indicates that Congress was unhappy with practices that had developed in certain parts of the country under Chapter 13's predecessor that had resulted in debtors remaining under court-supervised repayment plans for seven to ten years, which Congress characterized as being close to indentured servitude. Clearly, these concerns inspired the plan-duration limits Congress included in §§ 1329 and 1322.")

This proposition of limited duration of chapter 13 plans has been expressly recognized by the Fourth Circuit in *Pliler. See Pliler v. Stearns,* 747 F.3d. 260, 263 (4th Cir 2014). "[A] modified plan may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due." *Id.* at 266 (citing 11 U.S.C. § 1329(c)). Section 1329(c) thus "defines

---

2021); *see also In re Lemming,* 532 B.R. 398 (Bankr. N.D.Ga. 2015) (noting that the legislative history of § 1322(b)(8) indicates that the section was enacted to enable payment of claims from property of the estate or debtor only after such property was liquidated); *In re Crawford,* No. 11-24158, 2012 WL 930281 (Bankr. D.Colo. Mar. 19, 2012).

the temporal window within which modified payments … may be made by reference to the applicable commitment period." *Id.* A bankruptcy court is limited in its authority and may not approve a modification which extends the term of payments beyond five years. *See id.* at 266.[11]

The 2014 Modification Order did not change the monthly payment obligations or the vesting provisions, but it did provide that "***the Debtor shall make a payment*** to the Trustee ***from distributions available from the estate of David B. Goldston, Jr.***, Case No. 2013-7-999, in an amount sufficient to satisfy all allowed claims" and that "[g]eneral unsecured creditors shall be paid allowed claims on a pro rata basis by the Trustee ***to the extent that funds are available*** after payment of all other allowed claims." The Order indicated that the parties anticipated that the Debtor would be able to make a lump sum payment based on a distribution from his father's probate estate within the next ninety days (i.e., on or before July 21, 2014).

Debtor's Original Confirmed Plan was confirmed in March of 2010.  Therefore, the first payment after the Original Confirmed Plan was confirmed was due in April of 2010.  *See In re Stroud*, C/A No 07-04502-JW, slip op. (Bankr. D.S.C. Mar. 5, 2008) (The five-year limitation period imposed by § 1329(c) does not commence on the date that the first payment is due but rather on the date that the first payment after confirmation is due) (citing *West v. Costen (In re* Costen), 826 F.2d 1376, 1378 (4th Cir. 1987)).  Accordingly, the five-year period after the first payment

---

[11]    *See also In re Storey*, 392 B.R. 266 (6th Cir. B.A.P. 2008) (holding that the bankruptcy court could not modify a plan post-confirmation to extend the plan term beyond the applicable commitment period set forth in the original confirmed plan, even if the modification was to correct a mistake as to the length of the applicable commitment period); *In re Black*, 292 B.R. 693, 701 (10th Cir. B.A.P. 2003) ("It is sufficient to declare that the lump-sum-contribution practice followed in this case, which effectively extended the Debtor's plan beyond five years after her first payment under her original confirmed plan was due, violated § 1329(c)."); *In re Talison*, 597 B.R. 87, 88 (Bankr. E.D. Mich. 2019) ("The Court concludes that the approval of this proposed plan modification is impermissible, because the plan as modified would exceed the five-year limit in 11 U.S.C. § 1329(c)."); *In re Jefferson*, 299 B.R. 468 (Bankr. S.D. Ohio 2003) (finding a motion for modification of the plan cannot be sustained when "the modification, as proposed, will cause the term of the plan to exceed 60 months in violation of 11 U.S.C. §§ 1322(d) and 1329(c)").

under the Original Confirmed Plan was due ended in April of 2015.  In this case, Debtor could not

and cannot be compelled to make payments to the Trustee beyond that date.[12]

### b.    Payments to the Trustee are Limited to Income Debtor Received During the Commitment Period

While § 1306 indicates that all postpetition property and earnings are property of the estate

in a chapter 13 estate, it is only the property and earnings committed according to a confirmed plan

that are to be paid to creditors.  In the Fourth Circuit, it is only the receipt of additional post-

confirmation assets which are substantial and unanticipated that may serve as the basis to increase

plan payments for the benefit of creditors. *See In re Murphy,* 474 F.3d 143 (4th Cir. 2007)*; In re

Arnold,* 869 F.2d 240, 242 (4th Cir. 1989)*.*

In *Carroll v. Logan,* the Fourth Circuit considered whether a bankruptcy court properly

included an inheritance, which was received more than 180 days after the petition date, in the

chapter 13 bankruptcy estate. 735 F.3d at 150.  The trustee moved to modify the plan to include

"an amount of the [i]nheritance, ***if and when received***, sufficient to pay in full all of the allowed

general unsecured claims." *Id.*  at 149 (emphasis added). The bankruptcy court overruled the

debtors' objection and held that the inheritance was property of the estate. On appeal, the Fourth

Circuit held that § 1306(a) expands the definition of estate property for chapter 13 cases to include

all property acquired and all earnings from services performed after the commencement of the case

but before the chapter 13 case is closed, dismissed or converted.  It found that "[t]he statute's plain

language manifests Congress's intent to expand the estate for Chapter 13 purposes by capturing

---

[12]    While some language of the 2015 Consent Order could be read to intend otherwise, it did not modify the Plan or extend the applicable commitment period and therefore, does not provide what the Code prohibits.  Its import was merely to provide for the case to remain open.

the types, or "kind," of property described in Section 541 (such as bequests, devises, and inheritances), but not the 180-day temporal restriction." *Id.* at 150

In considering whether to modify a confirmed Chapter 13 plan in a case within the Fourth Circuit, the doctrine of res judicata (and § 1327(a)) prevents modification of a previously confirmed plan pursuant to §§ 1329(a)(1) or (a)(2) unless the party seeking modification demonstrates that the debtor experienced a "substantial" and "unanticipated post-confirmation change in his financial circumstances." *In re Arnold,* 869 F.2d 240, 244-45 (4th Cir. 1989).[13] In making this analysis, many courts, including this Court in *Krapf,* have examined the nature of the new income and the expenses the debtors might incur related to the income, as shown by amended schedules I and J, under a feasibility examination before determining that a modification should be approved. *In re Krapf,* 355 B.R. 545 (Bankr. D.S.C. 2006) (finding that settlement proceeds providing funds for future back surgery were not income because the expense of surgery was reasonably necessary for the maintenance or support of the debtor); *see also In re Murphy*, 474 F.3d 143 (4th Cir. 2007) (considering the debtor's current financial conditions, including actual changes to income and expenses, to determine if the proposal to modify the plan is feasible); *Goodman v. Gorman*, 534 B.R. 656 (E.D. Va. 2015) (considering whether debtor's increase in expenses was sufficient to defeat a proposed modified plan that sought to capture the debtor's increase in income resulting from an inheritance); *In re Swain*, 509 B.R. 22, 34 (Bankr. E.D. Va. 2014) (considering the debtor's amended schedules I and J, which reflected changes in the debtor's monthly expenses, to determine the feasibility of a post-confirmation modified plan).[14]

---

[13]     In *Arnold*, the Fourth Circuit held that an increase in a debtor's income from $80,000 per year to $200,000 per year constituted an unanticipated and substantial change in financial condition to support modification of the chapter 13 plan to increase the amount of the monthly plan payments and cause to extend the plan term from 36 to 60 months under § 1329(c). Notably, the Fourth Circuit did not extend the plan term beyond five years.

[14]     Other courts outside of the Fourth Circuit have also considered a debtor's Amended Schedules I and J to determine the feasibility of a proposed modified plan based on an increase in assets. *See, e.g., In re Arlin*, 596 B.R.

In *In re Murphy,* the Fourth Circuit considered whether debtors in two separate case had experienced a substantial change in financial condition sufficient to require modifications of their chapter 13 plans. 474 F.3d 143 (4th Cir. 2007).  In one instance, the debtors had refinanced their home mortgage, ***receiving*** some of the equity in their residence in exchange for a corresponding amount of debt.  In the other, the debtor had sold a condominium which had increased in value from $155,000 at the time the case was filed to $235,000 at the time of its sale by the debtor.  The Fourth Circuit held that the debtors who refinanced their home mortgage did not experience a substantial change in financial condition because all the debtors did was eliminate a portion of their equity in the property for cash in exchange for a debt in the same amount. *Id.* at 150. Accordingly, the doctrine of res judicata prevented modification of their confirmed plan pursuant to §§1329(a)(1) or (a)(2). Regarding the debtor who sold his condominium for profit, the Fourth Circuit held that he did experience a substantial change in financial condition because by selling his condominium, he ***received*** a substantial amount of readily available cash without any debt. Therefore, the bankruptcy court did not abuse its discretion by modifying the debtor's plan to provide for full payment of the pending unsecured claims.  *Id.* at 153. In both *Arnold* and *Murphy*, the debtors had ***actually received*** the funds that served as the basis for considering whether a substantial and unanticipated change in their financial conditions had occurred.

---

516 (Bankr. N.D. Tex. 2019) (considering whether the debtor has the present actual ability to make increased plan payments when the chapter 13 trustee sought a post-confirmation plan modification); *In re Ireland*, 366 B.R. 27, 34 (Bankr. W.D. Ark. 2007) ("Therefore, the only method left to determine disposable income/projected disposable income in a modified plan filed pursuant to 11 U.S.C. § 1329 is to compare Schedules I and J."); *In re Ripley*, C/A No. 14-01265-5-DMW, 2018 WL 737678, at *5 (Bankr. E.D.N.C. Feb. 6, 2018) ("The Debtor's actual income and expenses, as stated on the Updated Schedules, should be used to determine a modified plan payment under § 1329(a)."); *In re Wilhelm*, C/A No. 12-11235, 2016 WL 5478471 (Bankr. D.Kan. Sept. 29, 2016) (considering the debtor's changes in income and expenses at the time of a proposed modification of plan to determine if it is feasible under § 1325(a)(6)); *In re Martin*, C/A No. 10-64790, 2013 WL 6196566, at * 5–11 (Bankr. N.D. Ohio Nov. 27, 2013) (considering both the debtor's proposed income and expense modifications in determining whether a post-confirmation plan modification is appropriate); *In re Prieto*, C/A No. 3:08-bk-3308-PMG, 2010 WL 3959610, at *2 (Bankr. M.D. Fla. Sept. 22, 2010) ("[T]he debtor's actual income and expenses at the time of the proposed [post-confirmation] modification are used to determine whether the payments should be adjusted.").

When plans are modified based on an anticipated receipt of an inheritance, approved plans often provide for payment from the inheritance when received. For example, in *Carroll v. Logan* and the similarly situated case of *In re Ormiston*, 501 B.R. 303 (Bankr. E.D.N.C. 2013), in which the plans were modified to provide a higher dividend to unsecured creditors based upon the debtor's anticipated receipt of an inheritance, the chapter 13 trustee requested in both cases that the plans be modified to provide that the debtor be required to make a payment to the trustee **"*if and when*" the debtor received the inheritance**. (emphasis added). In that way, the provisions of the plans effectively contemplated that the debtor may not realize any funds from the inheritance during the applicable commitment period.[15] Plans in other cases involving similar issues have also provided for situations where the debtor has received and realized funds within the applicable commitment period.[16] *See In re Evans*, C/A No. 10-05397-8-DMW, 2015 WL 77722 (Bankr. E.D.N.C. Jan. 5, 2015) (granting a trustee's motion to modify plan to include the funds received from non-exempt life insurance proceeds that the debtor received during the applicable commitment period); *In re Lombardi*, 551 B.R. 84 (Bankr. D.Mass. 2016) (permitting modification of the plan when the debtor received funds from an inheritance); *In re Pittman*, C/A No. 08-08662-

---

[15]    Ultimately, in both cases, the inheritance funds at issue were realized prior to the expiration of the debtor's applicable commitment periods.

[16]    *See also In re Arnold*, 869 F.2d 240 (4th Cir. 1989) (addressing a post-confirmation modification of the plan when the debtor was receiving an increase in income from $80,000 a year to $200,000 a year); *In re Roberts*, 514 B.R. 358 (Bankr. E.D.N.Y. 2014) (addressing whether a post-confirmation modified plan to increase payments to creditors is necessary when the debtor has filed a motion to sell property that she inherited postpetition); *In re Whitfield*, C/A No. 19-00688-5-DMW, 2020 WL 6122293 (Bankr. E.D.N.C. Oct. 16, 2020) (addressing a post-confirmation modification of plan when the debtor had received $133,087.21 as a beneficiary of the debtor's parents' trust, which was realized post-confirmation); *In re Sayre*, C/A No. 8:11-bk-17184-RCT, 2017 11569064 (Bankr. M.D. Fla. Jul. 17, 2017) (requiring a post-confirmation modification to the debtor's plan after debtor's receipt of an income tax return that increased the debtor's disposable income); *In re Delconte*, C/A No. 07-30583, 2012 WL 1739788 (Bankr. E.D. Va. May 15, 2012) (requiring a modification of the plan after confirmation after the debtor was in receipt of an inheritance resulting from the post-confirmation death of the debtor's mother); *In re Zeitchick*, C/A No. 09-05821-8-JRL, 2011 WL 5909279 (Bankr. E.D.N.C. Sept. 23, 2011) (addressing the need for a debtor to modify the plan to increase distribution to creditors upon debtor's receipt of funds and property that debtor inherited from his mother post-confirmation).

8-RDD, 2010 WL 2206919 (Bankr. E.D.N.C. May 27, 2010) (denying a reconsideration of dismissal when the court dismissed the debtor's case for not filing a modified bankruptcy plan to increase payment after receipt of an inheritance).

In *Russell*, the Court addressed a chapter 13 trustee's motion to modify the debtor's chapter 13 plan as a result of a motor vehicle accident that occurred during the debtor's applicable commitment period but was later settled and realized as proceeds payable after the expiration of the commitment period. *In re Russell*, C/A No. 13-30160-DHW, 2016 Wl 3564314, at *2 (Bankr. M.D. Ala. June 22, 2016) (citing *In re Turner*, 425 B.R. 918, 919 (Bankr. S.D.Ga. 2010)). In denying the trustee's motion to modify the plan, the Court noted that in chapter 13, a debtor must commit all disposable income ***received by the debtor during the applicable commitment period***, noting the plain language of the statute. In this instance, the proceeds from the litigation settlement were property of the estate and disposable income, but because they were not received until after the expiration of the applicable commitment period, the debtor was not required to pay the settlement proceeds into the plan. *Id.* at *2.

The Court agrees with the reasoning of *Russell*. While a debtor unquestionably has a property interest in an inheritance upon the death of the decedent and such property interest becomes property of the estate under § 1306(a), that property interest does not become realized income that could be paid to the trustee until it is distributed to the debtor as a result of the probate administration.[17]

---

[17] By way of an analogy, the appreciation of value in a debtor's residence is a property interest that is part of the bankruptcy estate; however, it does not become an item of disposable income to be paid to the chapter 13 trustee until the debtor receives that appreciation through a sale of the property. *See Murphy*, 474 F.3d at 152 ("[Debtor], by selling his condominium, received a substantial amount of readily available cash without any debt. Thus, his financial condition substantially changed with the *receipt of this income*." (emphasis added)).

A chapter 13 debtor who has paid all income to the extent of the debtor's capability as defined by § 1325(b) over the required three-to-five-year period has completed what was expected and required under the Code to receive a fresh start. To hold otherwise and require a debtor to make payment for an indefinite term would be counter to the important public policy considerations of favoring chapter 13 proceedings over chapter 7.

While there may be concerns a debtor may intentionally delay the realization of funds to avoid payment to allowed unsecured creditors, the Code provides a sufficient mechanism to discourage such conduct through dismissal under § 1307(c)(1) for "unreasonable delay by the debtor that is prejudicial to creditors."

In this case, the Plan, as modified by the 2014 Modification Order, anticipated this approach and provided that additional payments from the inheritance would be made by Debtor to the Trustee *from funds received by Debtor from his father's estate*.

### c.   Powers of Debtor and Limitations on Trustee in Chapter 13

In a chapter 13 case, the debtor has certain rights and powers which he maintains *exclusive of the trustee*. 11 U.S.C. § 1303. For example, the chapter 13 debtor's rights and powers include the right to use, sell, or lease, other than in the ordinary course of business, property of the estate under § 363(b) and the right to sell property of the estate free and clear of any interest in such property under § 363(f). *See id.; Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) ("[I]n addition to his power to possess property, the Chapter 13 debtor is explicitly given the authority, exclusive of the trustee, to use, sell, or lease property of the estate in certain circumstances. . . . Implicit in the act of possession, as authorized by statute, is the right of the Chapter 13 debtor—unlike the chapter 7 debtor—to sue in his own name in such actions pursuant to Rule 17(a) . . . ."); *see also* Keith M. Lundin, LUNDIN ON CHAPTER 13, § 45.1, at ¶ [1],

LundinOnChapter13.com (last visited Mar. 29, 2021) ("One of the special attractions of Chapter 13 is that the debtor remains in possession and control of all property of the estate unless the debtor desires otherwise."). "The debtor's exclusive control of property of the estate includes the right to sue and be sued and also includes the right to control litigation involving the debtor." Lundin, § 45.1, at ¶ [9].

Section 1302 sets forth the duties of the chapter 13 trustee.[18]  Notably, the duties of a chapter 13 trustee *do not include* the duty "to collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest" set forth in §704(a)(1). *See* 11 U.S.C. § 1302 (incorporating duties specified in §§ 704(a)(2), 704(a)(3), 704(a)(4), 704(a)(5), 704(a)(6), 704(a)(7), and 704(a)(9)), but not § 704(a)(1)). Therefore, considering Debtor's exclusive rights under § 1303, the Trustee does not have the statutory authority or standing to appear in the probate estate proceedings for Debtor's father or collect and require payments to be made from the personal representative of the father's estate directly to her.

Additionally, the Trustee cannot reach an undistributed inheritance under § 521(a)(4), which requires a debtor to "surrender to the trustee all property of the estate." The use of the term "surrender" indicates the identified property of the estate must be in the debtor's possession and control. In this case, there is no evidence to date that Debtor possessed the inheritance funds during the term of the plan. Secondly, this Court agrees with other courts that §§ 1303 and 1306, which provides that a debtor shall have the exclusive use and possession of property of the estate,

---

[18]    These duties include: the duty to be accountable for all property received; the duty to ensure that the debtor performs his intention as specified in § 521(a)(2)(B)); to investigate the financial affairs of the debtor; the duty to examine proofs of claims and object to allowance of any claim that is improper; the duty to oppose discharge of the debtor if advisable; to furnish information regarding the estate and its administration as requested by a party in interest; and the duty to make a final report and file a final account of the administration of the estate with the court and with the United States Trustee. *See* 11 U.S.C. § 1302; §§ 704(a)(2), 704(a)(3), 704(a)(4), 704(a)(5), 704(a)(6), 704(a)(7), and 704(a)(9)).

supersedes § 521(a)(4) in the context of this case. *See Farmer v. Emp. Sec. Comm'n of North Carolina*, 4 F.3d 1274, 1284 (4th Cir. 1993) ("It is a basic principle of statutory construction that when two statutes are in conflict, a specific statute closely applicable to the substance of the controversy at hand controls over a more generalized provision."); *see also In re Crotty*, 11 B.R. 507, 510 (Bankr. N.D. Tex. 1981) ("The legislative history reflects that [§] 1306(b) supersedes the application of [§ 521(a)(4)] in Chapter 13 proceedings[.]" (citing S. Rep. No. 95-989, at 141 (1978) *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5927))); *In re Porras*, C/A No. 12-58699-MEH, 2015 WL 2357723 (Bankr. N.D. Cal. May 14, 2015) (finding that under § 1306(b), debtor's right to exclusive possession and control of estate property extended to $10,000 that was recovered from the debtor's prior counsel that was being held by trustee and that those funds were not committed to funding the chapter 13 plan); *Seigfried v. Board (In re Seigfried)*, C/A No. 14-01102-t, 2014 WL 7240071 (Bankr. D.N.M. Dec. 19, 2014) ("[I]n Chapter 13 cases[,] debtors have the exclusive right to use and control estate property and seek turnover."); *In re Hymond*, C/A No. 09-45346-dml-13, 2012 WL 6692196 (Bankr. N.D. Tex. Dec. 21, 2012) (denying a trustee's request for turnover of a postpetition tax refund on the basis that only the chapter 13 debtor can possess and use property of the estate under §§ 1303 and 1306); 4 Collier on Bankruptcy ¶ 521.16 (2020)("In chapter 12 and chapter 13 cases, the debtor is specifically granted the right to continued possession of all property of the estate; the specific provisions of those chapters override the provisions of section 521(a)(4).").

Finally, this Court notes the vesting language retained by the modified Plan provided that "[u]pon confirmation of the plan, . . . possession of property of the estate shall remain with the debtor"—a determination which is binding on the Trustee by *res judicata* and § 1327(a).[19]

---

[19]    *In re Linkous*, 990 F.2d 160, 162 (4th Cir. 1993) ("[A] bankruptcy court confirmation order generally is treated as res judicata."); *Hope v. Acorn Fin., Inc.*, 731 F.3d 1189, 1195 (11th Cir. 2013) ("[V]irtually all of the federal

Beyond the payments provided for in the 2014 Modification Order, the Trustee would need to further modify the Plan to seek authority to possess property of the estate. However, due to the expiration of the applicable commitment period, any further modification would not be permitted. Therefore, at this stage, the Trustee is bound by the express terms of the confirmed Plan to recognize Debtor's exclusive right to possess property of the estate, including the rights to the inheritance from his father's estate.

For all of the reasons stated above, Debtor cannot be required to make additional payments to the Trustee, nor does not Trustee have the authority to collect the inheritance otherwise as a matter of law due to Debtor's death.

## II.    *Discharge Under § 1328(a)*

Finding that Debtor made all of the scheduled payments required by the modified Plan, the critical issue is whether Debtor received distributions from his father's estate but failed to pay them to the Trustee or whether he acted to delay or avoid any distribution for the purpose of avoiding inheritance payments to the Trustee.  If Debtor did not act improperly and inheritance distributions were delayed in the normal course, Debtor may be entitled to a discharge under § 1328(a), which has not yet been requested by Debtor's counsel.  *See* 11 U.S.C. § 1328(a) (providing that a court shall grant the debtor a discharge "as soon as practicable after completion by the debtor of all payments under the plan….").

In *In re Harter*, a bankruptcy court was required to address a similar situation in which the debtor became entitled to an inheritance postpetition but did not receive any distributions from the

---

courts to have passed on (or opined on) this issue—bankruptcy, district and circuit—have (albeit with somewhat different rationales) come to the same conclusion: that a confirmed Chapter 13 plan binds the trustee in circumstances like those here and does not allow her to mount post-confirmation challenges."); 8 Collier on Bankruptcy ¶ 1327.02 (2020) ("Although not specifically mentioned [in § 1327(a)], the trustee is also bound by the plan because the trustee normally acts on behalf of creditors or, occasionally, the debtor.").

probate estate within the applicable commitment period. 279 B.R. 284  (Bankr. S.D. Cal. 2002).

In that case, the court held that the debtor would be entitled to a discharge under § 1328(a) upon

the expiration of the applicable commitment period as long as the debtor acted in good faith in

receiving distributions from the probate estate. *Id*. at 290. As stated by that court:

> The plan required the Debtor to contribute the Estate Distributions that he received within the five-year plan period, or the additional time that it took the Debtor to complete the minimum plan payments, and the Debtor was directed to help facilitate the likelihood that he would actually receive his Estate Distributions before the plan was completed. If the Debtor has complied with the Court's directive in good faith and was unsuccessful in obtaining a distribution, then the plan is complete.

*Id.*

To determine any request under § 1328(a), if made, the Court would require further

evidence to determine whether Debtor improperly acted to delay or avoid distribution in its normal

course, which is also a critical factor to the granting of a hardship discharge.

### III.    *Motion for Hardship Discharge*

Debtor presently seeks a hardship discharge pursuant to 11 U.S.C. § 1328(b).  Section

1328(b) allows the Court to grant a discharge to a debtor that has not completed payments under

the plan if he satisfies three criteria:

> (1) the debtor's failure to complete [his plan] payments is due to circumstances for which the debtor should not justly be held accountable;
>
> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and
>
> (3) modification of the plan under section 1329 of this title is not practicable.

Debtor bears the burden of proof for all three criteria.  *In re Barton,* No. 06-00524, slip op. (Bankr.

D.S.C. Apr. 18, 2008) (citing *Bandilli v. Boyajian (In re Bandilli),* 231 B.R. 836, 839 (B.A.P. 1st

Cir. 1999); *In re Keisler,* No. 04-07990-DD, slip op. at 3 (Bankr. D.S.C. Mar. 6, 2008); *In re Harrison,* No. 96036511-T, 1999 WL 33114273, at *1 (Bankr. E.D. Va. Aug. 3, 1999)). This Court has consistently held that death of the debtor can be a sufficient cause of the failure to complete plan payments to qualify for hardship discharge under 11 U.S.C. § 1328(b). *In re Mitchell,* C/A No. 16-03557, slip op. (Bankr. D.S.C. Oct. 9, 2020) (order granting hardship discharge to deceased debtor); *In re Inyard,* 532 B.R. 364 (Bankr. D.Kan. 2015) (same); *In re Quint*, C/A No. 11-04296-jw, slip op. (Bankr. D.S.C. Aug. 16, 2012) (same); *In re Bradley*, No. 09–01990–JW, slip op. (Bankr. D.S.C. June 22, 2011) (same); *In re Washington*, No. 04–08561–JW, slip op. (Bankr. D.S.C. Dec. 4, 2009) (same). This is because a debtor's failure to make payments due to his death is a circumstance for which the debtor should not be held justly accountable. This Court has previously considered the following factors to determine whether a debtor was justly accountable for his or her failure to make payments under the chapter 13 plan:

(1) whether the debtor has presented substantial evidence that he or she had the ability and intention to perform under the plan at the time of confirmation;

(2) whether the debtor did materially perform under the plan from the date of confirmation until the date of the intervening event or events;

(3) whether the intervening event or events were reasonably foreseeable at the time of confirmation of the chapter 13 plan;

(4) whether the intervening event or events are expected to continue in the reasonably foreseeable future;

(5) whether the debtor had control, direct or indirect, of the intervening event or events; and

(6) whether the intervening event or events constituted a sufficient and proximate cause for the failure to make the required payments.

*In re Barton,* No. 06-00524, slip op. at 4.

At the time of his death, Debtor had made more than 60 payments (actually 63) to the Trustee totaling $103,631.07. The Court is not aware that any distribution was made to Debtor

26

from his father's estate during the 60-month plan period or at any time to date. Due to his death, Debtor is unable to continue payments.

All parties agree that modification of the Plan is not practicable due to the death of Debtor. However, the Trustee, Dana Rabon Goldston, and Dale P. Johnson object to the hardship discharge, arguing that Debtor should be held accountable for his failure to complete his plan payments and therefore has not met the first criteria set forth in 11 U.S.C. § 1328(b)(1) and has not met the liquidation value requirement of 11 U.S.C. § 1328(b)(2).

The Trustee and objecting creditors argue that the long delay in administration of the probate estate was caused by Debtor's actions as executor and rely upon the order of the probate court which replaced Debtor as executor in 2017. The Trustee and objecting creditors argue that Debtor's responsibility for the delay can be inferred from the probate court's order finding that Debtor failed to effectively and efficiently administer and close the probate estate and that there was no valid justification for delay. The Trustee also asserts Debtor misapplied distributions from the father's estate. Debtor denies these assertions.

Considering Debtor appears to have made all of the scheduled monthly payments, any determination that Debtor's failure to complete his Plan was due to circumstances for which Debtor should not justly be held accountable necessarily relies upon two findings that require further evidence: whether Debtor, in his capacity as executor, may have received distributions from his father's probate estate without notifying the Trustee and whether Debtor's failure to timely liquidate assets and make distributions in the probate of his father's estate may have been related to his desire to avoid payment to the Trustee during the chapter 13 case. However, if no funds were available for distribution, then Debtor cannot be held accountable for his failure to pay those funds to the Trustee, especially since the Court observes that the successor executors also

did not make a distribution for a period of more than four years. Debtor bears the burden to present

evidence showing that no funds were available for distribution to demonstrate that he should not

justly be held accountable for his failure to make payment to the Trustee from distributions from

his father's probate estate.

Furthermore, § 1328(b)(2) requires that Debtor demonstrate that at the point of his death

he had previously paid the value "as of the effective date of the plan of property actually distributed

under a plan" on account of each unsecured claim that is not less than the amount that claim would

have been paid if the estate had been liquidated under chapter 7 on such date, which is often

referred to as the "best interest of creditors test" or the "liquidation test."[20] The majority of courts

indicate that value paid in the chapter 13 case for the liquidation test should be measured "as of

the effective date of the plan." *See In re Morgan*, 299 B.R. 118, 124 (Bankr. D. Md. 2003)

(applying the best interest of creditors test for a proposed modified plan as of the effective date of

the modified plan); *In re Merritt*, 344 B.R. 785 (Bankr. N.D. W.Va. 2006) ("In the context of a

plan modification, unless otherwise specified, the effective date of the plan is the date the plans is

modified, and the calculation of the best interest of creditors test includes, inter alia, the

appreciation of a debtor's existing real property from the petition date to the effective date of the

plan as modified.").[21] Recognizing the 2014 Modification Order as a modification of the Plan for

---

[20]   Debtor could have converted his case to chapter 7 at his election, and according to § 348, the inheritance would not be property of the estate.

[21]   The majority of courts also hold that the application of the liquidation test after a plan has been modified is the effective date of the modified plan. *See, e.g., In re Moore*, 602 B.R. 40, 51 (Bankr. E.D. Tenn. 2019) (applying the best interest of creditors test for a proposed modified plan as of the effective date of the modified plan); *In re Wilson*, 555 B.R. 547, 554 (Bankr. W.D. La. 2016) ("The majority view is that the liquidation test must be applied and determined as of the effective date of the plan as modified."); *In re Nachon-Torres*, 520 B.R. 306, 313 (Bankr. S.D. Fla. 2014) ("The statute provides that the date of the modified plan is the appropriate date for calculating the chapter 7 test, the legislative history support this interpretation if, in fact, the statute is ambiguous . . . ."); *In re Jefferson*, 299 B.R. 468, 470 (Bankr. S.D. Ohio 2003) ("[T]he Court determines that the appropriate date for performing the liquidation analysis required by §§ 1329(b) and 1325(a)(4) is the effective date of the modified plan."); *In re Nott*, 269 B.R. 250 (Bankr. M.D. Fla. 2000) ("When considering a modified plan, the Court finds that § 1325(a)(4) should be applied as of the effective date of the modified plan."); *In re Barbosa*, 236 B.R. 540, 552 (Bankr.

purposes of this case, such effective date would be the date of that Order.[22]    Since the effective

date was subsequent to the death of Debtor's father, his inheritance would have accrued on that

date.  Debtor bears the burden to present evidence showing that no funds were available for

distribution from his father's estate to demonstrate that the payments he previously made under

the confirmed Plan are not less than the amount that claims would have been paid if the estate had

been liquidated under chapter 7 on the date the 2014 Modification Order was entered.

---

D. Mass. 1999), aff'd on other grounds, 243 B.R. 562 (D.Mass.), aff'd 235 F.3d 31 (1st Cir. 2000) ("[T]he better
interpretation is that the 'effective date of the plan' is the effective date of the plan as modified. This interpretation
gives effect to § 1329(b)(2) and recognizes that the passage of time between confirmation of the original plan and
confirmation of the modified plan does change the facts and circumstances of a Chapter 13 case."); *In re Phillips*, C/A
No. 10-33023-DHW, 2014 WL 3700548, at *3 (Bankr. M.D. Ala. July 17, 2014) ("[T]his court holds that the proper
reading of the phrase 'effective date of the plan' as used in § 1325(a)(4) when considering a modified plan
confirmation under § 1329 is the effective date of the modified plan and not the original plan.").

[22]    The Court finds that the setting of the date for the determination of value distributed for purposes of
§1328(b) as the effective date of the most recent modified plan is also consistent with the vesting language used in
this District's form Chapter 13 plan. The modified Plan in this case (in Section V of the form plan filed April 19,
2012 as modified by the 2014 Modification Order) provides:

> *V. PROPERTY OF THE ESTATE, STATUS AND OBLIGATIONS OF THE DEBTOR
> AFTER CONFIRMATION:  Upon confirmation of the plan, property of the estate will remain
> property of the estate, but possession of property of the estate shall remain with the debtor.  The
> chapter 13 trustee shall have no responsibility regarding the use or maintenance of property of the
> estate.  The debtor is responsible for protecting the non-exempt value of all property of the estate
> and for protecting the estate from any liability resulting from operation of a business by the debtor.
> Nothing herein is intended to waive or affect adversely any rights of the debtor, the trustee, or party
> with respect to any causes of action owned by the debtor.*

While the Court could not find another case that defined the effect of this language, it is noteworthy that the
South Carolina language does not use the term "vesting" which, while not defined by the Bankruptcy Code, according
to Black's Law Dictionary usually means to confer ownership upon a person or to give an immediate, final right of
present and future enjoyment. BLACK'S LAW DICTIONARY 1557 (7th ed. 1999). Therefore, it could be argued that the
court has "otherwise ordered" and excepted out of the provisions of § 1327(b) and (c) to place our District's approach
within the "Estate Preservation approach." Keith M. Lundin, LUNDIN ON CHAPTER 13, § 120.3, at ¶ [9],
LundinOnChapter13.com (last visited Mar. 29, 2021). Nevertheless, by providing that "possession of property of the
estate shall remain with the debtor" with the Chapter 13 Trustee having no responsibility regarding its use and
maintenance appears to support the exclusive authorities provided the debtor in §§ 1303 and 363.

The Fourth Circuit has expressly avoided reconciling the interplay between §§ 1306(a) and 1327(b).
However, reconciling the Fourth Circuit's holdings in *Carroll, Arnold* and *Murphy,* with this District's form plan
language indicates that all postpetition property in a Chapter 13 case continues to be available to pay prepetition
creditors but only as provided in a confirmed plan or modified plan.  The importance placed on the criteria to justify
modification of a confirmed plan being a substantial and unanticipated change in circumstance leads the Court to
select that effective date of the modified plan for use under § 1328(b) as well.

For these reasons, the Court's determination of whether to grant Debtor's request for a hardship discharge awaits presentation of further evidence.

## IV.    *Dismissal and Continued Administration of the Case*

If Debtor is not eligible for a discharge either pursuant to § 1328(a) or (b), the court must consider either continuing case administration after death to allow continued distributions of the inheritance or dismissal of the case. The Court previously granted Debtor's motion to continue administration on March 11, 2021 to permit consideration of discharge despite the death of Debtor. If the Court declines to grant Debtor a discharge, the Court must consider whether further administration of the case or dismissal is appropriate under the circumstances.

Debtor's counsel has objected to the dismissal of the case seeking that the case remain open for an additional, very limited period of time for the future distribution from the probate estate assets of Debtor's father. Debtor's counsel asserts that none of the grounds for dismissal under § 1307 are present, that Debtor paid all of the monies required by his base Plan plus some additional monies, and that the delay in the distribution of probate estate assets from his father's estate was due to many circumstances that were beyond Debtor's control, including disputes between the heirs and his father's third wife who was not named in the father's will and was in possession of estate assets.

### a.    *Continued Administration Under Rule 1016*

Rule 1016 of the Federal Rules of Bankruptcy Procedure governs how a bankruptcy case must proceed when the debtor dies or becomes incompetent. Specifically, the bankruptcy rule provides in part:

> . . . If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of

the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

Fed. R. Bankr. P. 1016 (2021). In other words, upon the death of the debtor in a chapter 13 case, the Court must determine if the case should be dismissed or if it is possible and in the parties' best interests to continue administration of the case as if the debtor had not died.

The 1983 Advisory Committee Notes to Rule 1016 suggest that "in a . . . chapter 13 individual's debt adjustment case, [upon the death of the debtor,] the likelihood is that the case will be dismissed." *See also* 9 Collier on Bankruptcy ¶ 1016.04 (2020) ("[T]he debtor's death will often lead to dismissal of the case because the debtor will likely have no future income . . . .").

Ultimately, the determination of whether to dismiss or continue the administration of the case is within the discretion of the Court. *See Querner v. Quener (In re Querner)*, 7 F.3d 1199, 1201 (5th Cir. 1993) ("The Court had discretion under Bankruptcy Rule 1016 to continue the Chapter 13 case after the death of the debtor, and it had exclusive jurisdiction over the debtor's property during the pendency of those proceedings."); *Sanford*, 619 B.R. at 387 ("The discretion afforded by [Bankruptcy Rule 1016] mirrors the discretion afforded by § 1307(c)."); *Hawkins v. Eads (In re Eads)*, 135 B.R. 380, 383 (Bankr. E.D. Cal. 1991) ("The court must choose [upon the demise of the chapter 13 debtor] between dismissing the case and further administration . . ."). While the Court is granted "significant discretion in determining whether further administration is possible and in the best interest of the parties, such discretion . . . cannot contradict the Bankruptcy Code." *See In re Gariepy*, C/A No. 11-00827-JW, slip op. at 4–5 (Bankr. D.S.C. Jan. 3, 2014).

The burden to satisfy the requirements of Fed. R. Bankr. P. 1016 is on the party seeking to further the administration of the bankruptcy case, in this instance the Trustee and the objecting creditors. *See In re Gariepy*, C/A No. 11-00827-JW, slip op. at 4 ("The burden rests on the party requesting further administration of the Chapter 13 case following the death of the debtor to create

a record that supports such an exceptional finding."). Specifically, to demonstrate that a bankruptcy case should continue its administration, two elements must be shown: (1) further administration is possible and (2) it is in the best interest of the parties. "[A]ny determination of whether further administration of a deceased debtor's Chapter 13 case is possible and in the best interest of the parties under Rule 1016 is fact specific [and] must be made on a case-by-case basis, regardless of whether there is a creditor objection or the Chapter 13 Trustee consents to the relief requested." *Id.* at 4.

In the present matter, the Court will consider each element of Fed. R. Bankr. P. 1016 individually to determine if Debtor's case should be further administered at this time.

### b.    *The Possibility of Further Administration*

As this Court has previously noted, the term "further administration" is not defined by and no instructions are provided in the Bankruptcy Code or Rules; rather, its interpretation is limited to the language of Fed. R. Bankr. P. 1016. *See In re Brown*, 12-07082-jw, slip op. at 5 (Bankr. D.S.C. Mar. 25, 2013); *Sanford*, 619 B.R. at 388 ("Some [courts] have found that further administration was possible on their particular facts, while others reached the opposite conclusion on their particular facts. The cases have split results but none of them provide a working definition of criteria to determine what further administration means.").

Previously, this Court has stated that "the wording of Rule 1016 limits further administration of a deceased debtor's case to completing a case as it existed at the time of the debtor's death. Thus, actions within the scope of further administration would include those administrative or ministerial acts necessary to finish and close the case[,]" even allowing a § 1328(a) discharge request if all payments were made before the death of the debtor. *In re Swarthout*, C/A No. 09-06263-JW, slip op. at 5-6 (Bankr. D.S.C. Jan. 14, 2014).

The Court has permitted continued administration when all that remains to complete the case are the completion of incidental acts, *see In re Powell*, C/A No. 08-07093-jw, slip op at 3 (Bankr. D.S.C. Jan. 23, 2014) (permitting further administration when all plan payments have been completed in order to permit a request for discharge), or when there is a single voluntary payment to complete plan payments without the modification of the confirmed plan, either by a continuance of a monthly trustee payment to be paid from the income of a surviving joint debtor or by a timely lump sum payment paid by the deceased debtor's probate estate, *see Swarthout*, C/A No. 09-06263-JW, slip op. at 5 ("[F]urther administration appears possible where a *surviving joint debtor* has the ability to complete all payments due under the original confirmed plan to the discharge stage of the case using the assets of the deceased debtor and/or the income or assets of the surviving joint debtor, thereby allowing for the joint debtors' plan to be fully performed and satisfied.") (emphasis added).

This Court has also followed the majority of bankruptcy courts to find that Fed. R. Bankr. P. 1016 permits the further administration of a deceased debtor's bankruptcy case to allow for the deceased debtor to receive a hardship discharge, if eligible. *See In re Quint*, C/A No. 11-04296-jw, slip op at 5 n. 6 (Bankr. D.S.C. June 22, 2012) (highlighting prior occasions where the Court has granted a hardship discharge in a deceased debtor's case); *In re Inyard*, 532 B.R. 364, 368–69 (Bankr. D. Kan. 2015) ("[T]he vast majority [of courts] hold that Rule 1016 does not, as a matter of law, bar a hardship discharge for a deceased debtor, even if no further payments are made after death."); *In re Ferguson*, No. 11-50950-CAG, 2015 WL 4131596, at *2 (Bankr. W.D. Tex. Feb. 24, 2015) ("[C]ourts continually allow deceased debtors to move for a hardship discharge.").

However, the options to continue administration for a deceased debtor's case are limited. Debtor, being deceased, is unable to make payments or direct the administration of the bankruptcy

case. In addition, a probate estate does not have the capacity to perform or complete a chapter 13 case. A probate estate, even when represented by an executor, personal representative or heir, is not a "person" as defined under the Bankruptcy Code. *See In re Estate of Roberts*, C/A No. 05-26653 ESD, 2005 WL 3108224 (Bankr. D. Md. Aug. 15, 2005) ("[C]ourts have long concluded Congress left no doubt that an estate was not included in the definition of person."); 2 Collier on Bankruptcy ¶ 101.41 (16th 2020) ("It is important to note that the definition of 'person' does not include a probate estate . . . ."). As a consequence, a state court appointed personal representative, heir or probate estate for the deceased debtor does not have standing to propose a post-confirmation modification of a previously confirmed Chapter 13 plan. *See Thomas*, C/A No. 10-03395-jw, slip op. at 3 (denying the surviving joint debtor's motion to modify the chapter 13 plan confirmed as to both the surviving and deceased joint debtors); *Gariepy*, C/A No. 11-00827, slip op. at 8 (same); *In re Martinez,* 13–50438–CAG, 2013 WL 6051203, at *1 (Bankr.W.D.Tex. Nov. 15, 2013) (finding that in Chapter 13 only a debtor may propose a plan); *In re Spiser,* 232 B.R. 669 (Bankr.N.D.Tex.1999) (holding that deceased debtors' "estates, not being an 'individual' and, thus, not a 'debtor' in Chapter 13, cannot file a final plan.").

Likewise, a deceased debtor's case cannot be converted to chapter 7. Specifically, § 1307(g) only permits conversion to another chapter if the debtor may be a debtor under the proposed chapter to which the case would be converted. As the filing of a chapter 7 case is limited to a "person" as defined under the Code, the probate estate of a deceased debtor cannot file a petition under chapter 7. *See* 11 U.S.C. § 109(b) (2021) ("A person may be a debtor under chapter 7 of this title . . . ."). Therefore, a deceased debtor's case cannot be converted to chapter 7 as the deceased debtor's probate estate would not be permitted to file a chapter 7 petition. *See In re Gardner*, C/A No. 11-05561-JW, slip op. at 4–6 (Bankr. D.S.C. Dec. 31, 2013); *In re Moore*, No.

15-62639, 2017 WL 4417582, at *2 (Bankr. N.D. Ohio Oct. 3, 2017) ("The sum of the above impels the inescapable conclusion that [the deceased chapter 13 debtor's] case cannot be converted to chapter 7."); *In re Perkins*, 381 B.R. 530, 533 n.4 (Bankr. S.D. Ill. 2007) ("It is likewise well-settled that, because a probate estate is not eligible to file a bankruptcy case under any chapter, conversion from one chapter to another is also prohibited."); *In re Spiser*, 232 B.R. 669, 673 (Bankr. N.D. Tex. 1999) ("[C]onversion to Chapter 7 by a debtor's probate estate is not permitted under the Bankruptcy Code."). Therefore, a motion to continue administration of a deceased debtor's case in order to permit a motion to convert the case to chapter 7 must be denied. *See id.*

In the present matter, as a result of his death, Debtor's case cannot be converted, and the confirmed Plan in the case cannot be modified. Therefore, in the absence of evidence showing Debtor is entitled to a discharge, the only option remaining for the further administration of Debtor's case is the completion of his modified confirmed Plan as proposed.

While Debtor's inheritance is considered property of the estate under *Carroll v. Logan*, 735 F.3d 147 (4th Cir. 2013), the path of the Trustee's receipt of those funds to complete the Plan has expired. In addition, as stated above, the Chapter 13 Trustee lacks the statutory authority to collect, reduce to money, or compel the surrender of property of the estate, including Debtor's inheritance from his father that presently remains unliquidated in the father's probate estate. The Chapter 13 Trustee is limited to disposing of the monies paid by Debtor under the confirmed Plan. As Debtor is now deceased, the Chapter 13 Trustee lacks any avenue, under the Code or under the modified Plan to compel the direct payment of the inheritance funds from the father's estate. Instead, those funds would be paid to Debtor's probate estate.

Finally, as discussed above, any payment to the Chapter 13 Trustee resulting from the inheritance from Debtor's father will be beyond the applicable commitment period of the modified

plan. To now allow further administration so that a payment under the Plan may be made more than ten years after it was first confirmed would violate the commitment period requirements of §§ 1322(d), 1325(b), and 1329(c). Therefore, a further payment at this time is simply not possible under the Bankruptcy Code.

For the reasons stated above, the Court finds under Fed. R. Bankr. P. 1016 that absent a discharge, further administration is not possible and the case should be dismissed.

### c. *Further Administration Is Not in the Best Interest of Parties*

The elements for further administration under Fed. R. Bankr. P. 1016 are conjunctive such that a party seeking further administration must not only show that it is possible, but also that the further administration is in the best interest of parties. In this case, the objecting creditors and the Trustee seek further administration as evidenced by their objection to the hardship discharge and, therefore, bear the burden to demonstrate that further administration is in the best interest of parties.

As an initial matter, Fed. R. Bankr. P. 1016 does not define "parties." A review of the plain language of Fed. R. Bankr. P. 1016, as compared to other code sections, indicates that the use of the term "parties" suggests that the definition is broad. While other sections of the Bankruptcy Code and Rules utilize the terms "parties in interest" or "best interest of creditors," (to describe prepetition creditors), the use of "parties" in Fed. R. Bankr. P. 1016 clearly indicates an intent to go beyond that group.[23] Throughout the Code and Rules, whenever Congress, by enactment of legislation or by the adoption of procedural rules, intended to identify a specific party or class of

---

[23]    *See, e.g.*, 11 U.S.C. § 1109(b) (2021) (defining a party in interest for purposes of chapter 11 proceeding as "including the debtor, the trustee, a creditors' committee, an equity security holders' committee, an equity security holder, or any indenture trustee"); 11 U.S.C. § 1324(a) (2021) ("A party in interest may object to confirmation of the plan."); 11 U.S.C. § 1307(c) (2021) (permitting conversion or dismissal of a chapter 13 case depending on "whichever is in the best interest of creditors and the estate" whenever cause is established); 11 U.S.C. § 305(a) (2021) (considering whether "the interests of creditors and the debtor would be better served by" the Bankruptcy Court's abstention).

creditors, the rules have specifically indicated that party or class. Without a specific indication or ambiguity otherwise, the Court concludes, based upon the plain language, that "parties" as indicated in Fed. R. Bankr. P. 1016 encompasses the interests of many parties beyond prepetition creditors or parties in interest.

While some courts apply the term "parties" under Fed. R. Bankr. P. 1016 to interests of parties that have appeared in the bankruptcy (such as prepetition creditors),[24] other courts have considered the interests of both the deceased debtor's prepetition and postpetition creditors. *See In re Sanford*, 619 B.R. 380, 390 (Bankr. E.D. Mich. 2020) (finding that postpetition creditors have a cognizable interest in the deceased debtor's chapter 13 case); *In re Inyard*, 532 B.R. 364, 368 (Bankr. D. Kan. 2015) (considering the interests of both prepetition and postpetition creditors); *In re Shorter*, 544 B.R. 654 (Bankr. E.D. Ark. 2015) ("Depending on the facts of the case, many courts consider the interests of all who are affected by a hardship discharge, and not just the parties to the bankruptcy case, i.e., the Debtor, the Creditors, and the Trustee.").

Further, several courts consider not only the interests of all the deceased debtor's prepetition and postpetition creditors, but also the interests of the debtor's heirs and probate estate. *In re Bond*, 36 B.R. 49 (Bankr. E.D.N.C. 1984) (considering the benefit to the deceased debtor's minor children); *In re Conn*, C/A No. 13-62278, 2015 WL 3777958, at *2–3 (Bankr. N.D. Ohio June 12, 2015) (considering benefit to surviving spouse and creditors); *In re Levy*, C/A No. 11-60130, 2014 WL 1323165 at *4 (Bankr. N.D. Ohio Mar. 31, 2014) ("[T]he court has considered the interests of other creditors, a debtor's ex-spouse, the probate estate, and a surviving joint debtor."); *In re Marshall*, C/A No. 09-11603-8-RDD, 2012 WL 1155742 (Bankr. E.D.N.C. Apr.

---

[24]   *See In re Miller*, 526 B.R. 857, 861 (D. Colo. 2014); *In re Fogel*, 512 B.R. 659 (Bankr. D. Colo. 2014); *In re Hennessy*, C/A No. 11-13793, 2013 WL 3939886 at *2 (Bankr. N.D. Cal. Jul. 29, 2013); *In re Sale*, C/A No. 03-60861, 2006 WL 2668465, at * 3 (Bankr. N.D.Ohio Sept. 15, 2006).

5, 2012) (considering the interest of the deceased debtor's heirs when denying a request for a hardship discharge). Considering the plain meaning of "parties" in Fed. R. Bankr. 1016, the Court joins in this broader interpretation.

### d.    If No Discharge, Dismissal is Appropriate

In considering the interests of all parties, in the instance that no discharge is presently granted to Debtor due to Debtor misconduct or failure to meet the statute's requirements, the Court finds parties may be better served by the dismissal of Debtor's case. While the confirmed Plan purportedly provides for 100% payment of the allowed prepetition unsecured creditors, the applicable commitment period expired before any distributions were received from the father's probate estate, such that no payments were available for the Trustee. Considering the long delay, creditors have been significantly delayed in their recovery and there is no clear indication if or when the matters will be resolved in the probate estate for Debtor's father or Debtor's own probate estate. They have been subject to the automatic stay under § 362 for nearly 12 years and may be subject to it for an indefinite period of time until the conclusion of the probate process is at hand.

In considering the interests of the postpetition creditors, this Court believes that they would be prejudiced if a significant post-confirmation asset was to benefit solely the prepetition creditors. The facts associated with the 2014 Modification Order do not indicate that Debtors then existing debt obligations or actual expenses were considered in determining what income should be available for payment by prepetition creditors. *See In re Swain*, 509 B.R. 22, 34 (Bankr. E.D.Va. 2014) (considering the debtor's amended schedules I and J to determine the feasibility of the payments proposed under a modified plan).

Under the circumstances of this case, the Court finds in light of the expiration of the applicable commitment period, Debtor's prepetition and postpetition creditors are similarly

situated and should be equally considered. Debtor's modified Plan provided that Debtor would maintain postpetition obligations directly to those creditors. The bankruptcy court, as opposed to the probate court, has limited mechanisms for the consideration of postpetition claims, namely those claims listed under § 1305(a). Further administration in the bankruptcy court would create confusion due to pending matters in multiple forums, especially when Debtor's probate estate may serve as a single forum to consider the competing interests of prepetition creditors, postpetition creditors and Debtor's heirs/devisees.

Likewise, the Court finds that Debtor's heirs would benefit from dismissal of Debtor's case by having the probate court serve as a single forum for all parties and creditors. Further, dismissal would benefit both the heirs and Debtor's creditors through the avoidance of the payment of the Chapter 13 Trustee's percentage fee for disbursements, maximizing the pool of funds available for distribution to them from the probate estate. While Debtor's heirs may argue that an issuance of a hardship discharge would be more beneficial, the Court notes that Fed. R. Bankr. P. 1016 does not require it to be in the best interest of the heirs only but requires consideration of all the parties to the matter. In this case, weighing the interests of Debtor's creditors with those of his heirs, as well as the delay that has already resulted in these proceedings and the unclear time period needed to conclude Debtor's bankruptcy case and the availability of the probate court as a single forum to consider all of the parties' interests, the Court finds that if no discharge is granted, continued administration is not in the best interest of the parties and dismissal of Debtor's case under Fed. R. Bankr. P. 1016 is appropriate at this time.

### e. *Probate Exception*

Deference to the probate court for Debtor's estate under these circumstances is also appropriate in consideration of the probate exception under federal jurisprudence. "The probate

exception is a judicially created doctrine that limits federal jurisdiction." *Rentas v. Gonzalez (In re Garcia)*, 507 B.R. 32, 44 (1st Cir. B.A.P. 2014). In *Marshall v. Marshall*, 547 U.S. 293 (2006), the United States Supreme Court held that

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

Id. at 311–12. The Fourth Circuit has stated the following about the probate exception:

> [A]fter *Marshall*, the probate exception is limited to two categories of cases: (1) those that require the court to probate or annul a will or to administer a decedent's estate, and (2) those that require the court to dispose of property in the custody of a state probate court.

*Lee Graham Shopping Center, LLC v. Estate of Kirsch*, 777 F.3d 678, 680–81 (4th Cir. 2015). Further, federal courts may not endeavor to "assume *in rem* jurisdiction over property that is in the custody of the probate court" under the probate exception. *Three Keys Ltd. v. S.R. Util. Holding Co.*, 540 F.3d 220, 227 (3d Cir. 2008) (cited this particular proposition as support by the Fourth Circuit in *Kirsch*, 777 F.3d at 681). In this case, to the extent that the Chapter 13 Trustee or objecting creditors seek the Court to require the probate estates of Debtor or his father to pay over funds currently in the custody of or to be received by the probate court, such an order would appear contrary to the probate exception set forth in *Marshall. See also Garcia*, 507 B.R. at 45 ("[T]o the extent that the [chapter 7] trustee's complaint demanded that the bankruptcy court order the [probate court] to distribute proceeds on a basis other than § 542(a) of the Bankruptcy Code, the complaint fell within the probate exception, and the bankruptcy erred in adjudicating it."); *Vaughn v. Montague*, 924 F.Supp.2d 1256, 1268–69 (W.D. Wash. 2013) ("Under the probate exception, this court cannot order distribution of the trust's assets, nor declare the estate settled."); *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007) ("[P]robate exception barred court from entering

orders enjoining disposition of estate assets, divesting defendants of estate property, or declaring that already-probated will was invalid."). Without the ability of the Trustee to require payment from the probate estate of Debtor or his father,[25] there is no ability to satisfy any further payment requirements of the confirmed Plan. Therefore, the probate exception to federal jurisdiction also supports a dismissal of Debtor's case under Fed. R. Bankr. P. 1016 if a discharge is not granted.

## V.    *Additional Grounds for Dismissal of the Case*

In such instance that the Court determines that dismissal would be appropriate pursuant to Fed. R. Bankr. P. 1016, it concludes the analysis. However, were this Court to examine further, it finds other authority supporting dismissal of the case as well.

Accepting the Trustee and creditors' arguments that Debtor contributed to the delay in distributions and payments to the Trustee, the Court would find cause for dismissal, including under § 1307(c)(1) for unreasonable delay by Debtor that is prejudicial to creditors. See 11 U.S.C. § 1307(c) ("[T]he court . . . may dismiss a case under this chapter . . . for cause, including unreasonable delay by the debtor that is prejudicial to creditors . . . ."). *See, e.g., In re Grant,* 428 B.R. 504, 506-508 (Bankr. N.D.Ill. 2010) (dismissing case for cause, finding that debtor's failure to complete plan payments within five years, where modification to allow completion was not feasible, constitutes a material default for purposes of § 1307(c)(6)); *In re Roberts,* 279 B.R. 396 (1st Cir. BAP 2000) (dismissing case which had been pending for more than five years based upon

---

[25]    The Court further notes that the Chapter 13 Trustee's ability to seek turnover of estate property under § 542 is questionable. As set forth by one court:

> Not only do sections 1303 and 1304 give chapter 13 debtors the powers of a trustee under section 363, but section 1306(b) provides that debtors shall remain in possession of all property of the estate unless a confirmed plan provides otherwise. It is also instructive (although not necessarily controlling) that while section 1302(b) requires the Trustees to perform many of the duties of a chapter 7 trustee, it does not require them to collect property of the estate. 11 U.S.C. §§ 1302(b), 704(a)(1). Accordingly, while tax refunds are property of the estate, the Trustees may not compel their turnover pursuant to section 542(a).

*In re Hymond,* C/A No. 09-45346-dml-13, 2012 WL 6692196, at *4 (Bankr. N.D. Tex. Dec. 21, 2012).

debtor's material default under the plan, where the debtor's payments were insufficient to pay a 10% dividend to unsecured creditors due to the filing of a postpetition tax claim, and denying debtor's request for hardship discharge based upon debtor's failure to prove that his failure to make payments was beyond his control).

Further, dismissal would be warranted for "cause" pursuant to § 1307(c)(6), "material default by the debtor with respect to a term of a confirmed plan." At this late stage in the case and due to the Debtor's death, the Court has no authority to allow amendment of the modified Plan at the request of Debtor or the Trustee. To the extent Debtor is not eligible for a discharge, Debtor's case has not been fully administered. Debtor's entitlement to the inheritance is an asset that has not been realized and is not readily available for distribution. If the evidence indicates that the delay in distribution of the inheritance to Debtor and his ultimate failure to make payment of those funds to the Trustee was intentional, this would constitute a material default of his Plan.

Finally, the ability of the state probate court to fairly and effectively administer the assets of Debtor, including the inheritance from his father's estate, provides grounds for dismissal under § 305(a). *See* 11 U.S.C. § 305(a) (2021) ("The court, after notice and a hearing, may dismiss a case under this title . . . at any time if the interest of creditors and the debtor would be better served by such dismissal or suspension . . . .").

The Bankruptcy Court's continued administration of the bankruptcy case while two other probate courts act simultaneously to examine, liquidate, and distribute the same assets, would appear unnecessary and an abuse of process under the facts of this case and, therefore, provides additional grounds for the Court to dismiss the case.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby continues the hearing on Debtor's Motion for

Hardship Discharge to receive further evidence and alternatively to consider dismissal of the case.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/15/2021**



US Bankruptcy Judge
District of South Carolina

Entered: 04/15/2021